# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RACHEL MILLER-GARCIA,** Plaintiff, vs. **AVANI MEDIA, LLC, ET AL.,** Defendants. | CASE NO. 19-cv-04130-YGR<br><br>**ORDER DENYING MOTION OF DEFENDANTS AVANI MEDIA, LLC AND THE 615 GROUP, LLC TO STAY OR DISMISS; SETTING CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. No. 11 |

Plaintiff Rachel Miller-Garcia brings this employment and breach of contract action against defendants Avani Media, LLC and The 615 Group, LLC. Defendants now move the Court for an order staying or dismissing this action pending resolution or dismissal of a parallel state court action proceeding before the Chancery Court of Davidson County, Tennessee, Twentieth Judicial District at Nashville, *Avani Media, LLC and The 615 Group, LLC v. Rachel Miller-Garcia*, Case No. 18-491-II ("the Nashville Action"). Defendants seek a dismissal or stay of the present action pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue, the forum non conveniens doctrine, and the *Colorado River* doctrine. Defendants contend that plaintiff entered into a valid, enforceable forum selection clause which requires this dispute be heard in Davidson County, Tennessee, and the instant action should be stayed pending resolution of the Nashville Action.

Having carefully considered the papers submitted, the pleadings in this action, and the admissible evidence[1], and for the reasons set forth below, the Court **DENIES** the Motion to Stay or Dismiss.

---

[1] Defendants' request for judicial notice (Dkt. No. 14 ["RJN"]) in connection with their motion is **GRANTED IN PART**. The Court will consider the documents for the fact of their filing in the related Tennessee court matter, not for the truth of the matters stated therein.

## I. SUMMARY OF FACTS

Defendant Avani Media LLC ("Avani") has two members, Robert Bellenfant and Zach Jones, both of whom were Tennessee residents at the time of the company's formation to the present. (Bellenfant Decl., Dkt. No. 12, ¶ 2.) Defendant The 615 Group, LLC ("615 Group") was created some time in February 2018 to administer benefits for Avani Media. Bellenfant is the only member of that LLC. (Bellenfant Decl. ¶ 3.)

In late December 2017, Robert Bellenfant, on behalf of soon-to-be-formed start-up Avani Media, LLC, began negotiations with Miller-Garcia to hire her as its President and General Manager. (Bellenfant Decl. ¶ 5.) The start-up was to be based in the San Francisco area and Miller-Garcia was to be one of only two employees of the company. (*Id*. ¶¶ 2, 5.) Avani Media LLC was formed as of January 2018 and, on January 2, 2018, Miller-Garcia accepted an offer of employment with Avani. (Miller-Garcia Decl., Dkt. No. 23-1, ¶ 2.) Soon thereafter, Bellenfant provided Miller-Garcia with draft employment agreement. (Miller-Garcia Decl. ¶ 2.) The draft agreement contained the following forum selection and choice of law provision:

> 10.9 Governing Law and Venue. This Agreement shall be governed by and construed in accordance with the laws of the State of Tennessee. Any litigation brought with respect to this Agreement shall be brought in a court of competent jurisdiction in Davidson County, Tennessee.

(Miller-Garcia Decl., Exh. B). On January 15, 2018, Avani and Miller-Garcia finalized the agreement and Miller-Garcia signed it, setting a start date of January 29, 2018. (Bellenfant Decl. ¶ 7, Exh. A; Miller-Garcia Decl. ¶ 7, Exh. B.) The final agreement included section 10.9 unchanged.

On February 7, 2018, Miller-Garcia unexpectedly learned she required surgery due to a medical condition. (Miller-Garcia Decl. ¶ 10; NOR Exh. 1 ["SF Superior Court Complaint"] at ¶ 24.) Miller-Garcia alleges she disclosed the medical condition to her co-worker Mekenna Olsen on that same day, at which point Olsen harassed her regarding the medical condition and told her she should disclose the medical condition to Bellenfant. (SF Superior Court Complaint ¶ 24.)[2]

---

[2] On February 15, 2018, Miller-Garcia's employment agreement was assigned to 615 Group for the purpose of administering benefits. (Bellenfant Decl. ¶ 8, Exh. B.)

On March 12, 2018, defendants terminated Miller-Garcia. She alleges that she was terminated due to discrimination on account of her serious medical condition, her disability, and her request for reasonable accommodation, and in violation of her employment contract. (Miller-Garcia Decl. ¶ 10.) In March and April of 2018, Miller-Garcia informed Avani Media and 615 Group that she intended to sue them for discrimination and breach of contract. In response, Avani Media and 615 Group filed a lawsuit in Tennessee state court on May 4, 2018 for a declaratory judgment that Miller-Garcia had been terminated for gross negligence pursuant to the terms of her employment agreement, as well as breach of and rescission of the employment agreement. (Bellenfant Decl. ¶ 10; RJN Exh. 1.)

On or about May 21, 2018, Miller-Garcia filed a complaint with the California Department of Fair Employment and Housing (DFEH) regarding her claims of discrimination by defendants. (Coll Decl. ¶ 3.) Within a few weeks, Avani Media closed its California office and opened an office in Tennessee. (Bellenfant Decl. ¶¶ 2, 4.)

On August 23, 2018, Miller-Garcia notified defendants, through counsel, that she was exercising her right to void Section 10.9 of the Employment Agreement citing to California Labor Code section 925. (Miller-Garcia Dec. ¶ 13, Exh. E.) Section 925 makes out-of-state choice of law and forum selection clauses illegal in California employment contracts, and voidable by the employee. Cal. Labor Code § 925(a), (b). On that basis, Miller-Garcia filed a motion to dismiss the action in the Tennessee court. The Tennessee court denied the motion to dismiss on the face of the pleadings, finding that there was a dispute of facts related to whether the choice of law provision was a condition of employment for purposes of section 925, and thereafter set an "expedited proceeding" on the issue for September 2019. (RJN Exh. G, I.)[3]

Having failed to prevail on the motion to dismiss, Miller-Garcia requested from DFEH a right-to-sue letter on her administrative discrimination complaint, which was issued on February 4, 2019. (Coll Decl. ¶ 4, Exhs. A, B.) Thereafter, on April 29, 2019, Miller-Garcia filed suit in the Superior Court of the State of California, County of San Francisco. (NOR, Dkt. No. 1.)

---

[3] The parties have not indicated that the Tennessee court has issued any decision following that evidentiary hearing, nor is the Court otherwise aware of any such decision.

3

1  Defendants removed that action to this Court by Notice filed July 18, 2019. (*Id.*)

**II. DISCUSSION**

    **A.  California Labor Code section 925**

Defendants' motion to stay or dismiss this action for improper venue[4] or based on forum non conveniens fails because their basis for asserting that venue should be in Tennessee and not in California relies on a forum selection clause that is void by operation of California Labor Code section 925. Section 925 applies to employment contracts "entered into, modified, or extended on or after January 1, 2017." Cal. Labor Code § 925(f). Section 925 provides that "[a]n employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would do either of the following: (1) [r]equire the employee to adjudicate outside of California a claim arising in California[; or] (2) [d]eprive the employee of the substantive protection of California law with respect to a controversy arising in California." Cal. Labor Code § 925(a). Section 925 further states that "[a]ny provision of a contract that violates subdivision (a) is voidable by the employee, and if a provision is rendered void at the request of the employee, the matter shall be adjudicated in California and California law shall govern the dispute." Cal. Labor Code § 925(b).

Under 28 U.S.C. section 1404(a), a district court has discretion to *transfer* an action to another forum. Section 1404(a) permits transfer to "any district where venue is also proper . . . or to any other district to which the parties have agreed by contract or stipulation." *Atlantic Marine Const. Co. v. U.S. Dist. Court*, 571 U.S. 49, 59 (2013). Forum selection clauses may be enforced through a motion to transfer under section 1404(a). *Id.* As a preliminary matter, the court must determine whether there is a "contractually valid forum-selection clause." Id. at 62 n. 5.

Here, despite Avani's arguments to the contrary, the forum selection clause in Miller-

---

[4] Defendants purport to move to dismiss for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure. However, Rule 12(b)(3) does not provide grounds for dismissal unless this district would be an improper venue under federal venue laws, and a forum selection clause "has no bearing" on that determination. *Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 56 (2013). Moreover, because "a substantial part of the events or omissions giving rise to the claim occurred" in and around San Francisco, this district is a proper venue under 42 U.S.C. section 1391(b)(2).

4

Garcia's employment agreement is invalid. The record before the Court establishes that Avani required Miller-Garcia to agree, as a term and condition of her employment, to a provision which required her to adjudicate claims arising in California in another state and deprived her of the protections of California law. Avani drafted the employment agreement, including the provision at paragraph 10.9 stating that Tennessee law governed and Davidson County, Tennessee was the required venue for any litigation. Article I of the agreement stated: "The Company hereby agrees to employ Employee and Employee agrees to accept employment *upon the terms and conditions of this Agreement*." (Miller-Garcia Decl. Exh. A at 1, emphasis supplied.) While Miller-Garcia and Bellenfant negotiated regarding Avani's inclusion of non-solicitation and non-compete provisions in her employment agreement, Miller-Garcia avers that Bellenfant insisted on non-compete and non-solicitation terms contrary to California law, stating Avani's attorneys advised that Avani is a Tennessee company to which Tennessee law applied. (Bellenfant Decl. ¶ 6; Miller-Garcia Decl. ¶¶ 4, 5.) Before Miller-Garcia signed the employment agreement, Bellenfant copied her on an email discussing terms of the agreement with the one other employee Avani was hiring, Mekenna Olsen. (*Id*. ¶ 5.) In that email, responding to Olsen's query about whether section 10.9 was appropriate since she was going to be a California employee, Bellenfant stated "we need to have a mutual understanding that our contract will be governed by TN state laws." (*Id*. ¶ 5.) Miller-Garcia states:

> I understood from my communications with Mr. Bellenfant and Mr. Bellenfant's copying me on communications with Ms. Olsen that Avani was requiring me to be bound by Tennessee law, so I ultimately signed the agreement because I wanted to get the job.

(*Id*. ¶ 6.) Bellenfant denies that he or anyone else at Avani ever told Miller-Garcia her employment was contingent on her acceptance of the venue and choice of law provisions in her employment agreement. (Bellenfant Decl. ¶ 6.) But Bellenfant did not need to say those exact words given his communications, directly and indirectly, to Miller-Garcia that the Tennessee choice of law and venue questions were non-negotiable.

Defendants' citations to authorities granting a stay or transfer in spite of an objection based on section 925 are distinguishable and unavailing. In *Campbell*, the court found that plaintiff had

5

failed to "put forth evidence, or allege facts, to demonstrate that they primarily resided or worked in California." *Campbell v. FAF, Inc.*, No. 19-CV-142-WQH-BLM, 2019 WL 2574119, at *6 (S.D. Cal. June 20, 2019). Next, in *Mostipak*, the plaintiff cited to section 925 even though his employment agreement pre-dated the effective date of the statute. The court in *Mostipak* found that "[p]laintiff has not demonstrated that California's public policy makes enforcement of the Agreement unreasonable" since the plaintiff expressly agreed in the contract that the provisions of the agreement were reasonable. *Mostipak v. Badger Daylighting Corp.*, No. 2:17-CV-247-MCE-CKD, 2017 WL 4310677, at *4 (E.D. Cal. Sept. 28, 2017). In the same vein, the court in *Mechanix Wear* rejected application of section 925 in a case where plaintiff never worked for defendant in California and the employment agreements were entered into before the effective date of the statute. *Mechanix Wear, Inc. v. Performance Fabrics, Inc.*, No. 2:16-CV-9152-ODW(SS), 2017 WL 417193, at *7 (C.D. Cal. Jan. 31, 2017).

By contrast, numerous courts have found forum selection and choice of law clauses to be "required" and "conditions of employment," and therefore voidable at the election of employees who worked and resided in California, under circumstances similar to those here. *See, e.g.*, *Karl v. Zimmer Biomet Holdings, Inc.*, No. 18-cv-04176-WHA, 2018 WL 5809428, at *7 (N.D. Cal. Nov. 6, 2018) (declining to enforce forum selection and choice of law terms including in modifications of plaintiffs' employment agreements); *Lyon v. Neustar, Inc.*, No. 2:19-CV-371-KJM(KJN), 2019 WL 1978802, at *7–8 (E.D. Cal. May 3, 2019) (language in preamble of agreement that employment was "in exchange for my agreeing to the terms of this Agreement" sufficient to show all terms, including forum selection clause, were required conditions of employment); *Yeomans v. World Fin. Grp. Ins. Agency, Inc.*, No. 19-CV-00792-EMC, 2019 WL 5789273, at *7 (N.D. Cal. Nov. 6, 2019) (the "voluntary choice" to accept a promotion did not change the fact that forum selection clause was a "condition of employment" and therefore the agreement was "within the purview of § 925"); *DePuy Synthes Sales Inc. v. Stryker Corp.*, No. ED CV 18-1557 FMO(KKx), 2019 WL 1601384, at *3 (C.D. Cal. Feb. 5, 2019) (voiding forum selection clause where plaintiff "signed the Agreement as a condition of his employment with defendant in California after the effective date of the statute").

**B.** *Colorado River* **Doctrine**

Defendants next seek to dismiss or stay this action in favor of the pending Tennessee state court action based on the *Colorado River* doctrine. Generally, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). However, in the interest of "wise judicial administration" and "conservation of judicial resources," federal courts may stay a case involving a question of federal law where a concurrent state action is pending in which the identical issues are raised. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (internal citations omitted). The circumstances under which a stay or dismissal pursuant to the *Colorado River* doctrine may be granted are limited and exceptional. *Id*. at 818; *see also Seneca Insurance Co. v. Strange Land, Inc.*, 862 F.3d 835, 839 (9th Cir. 2017) ("In situations of concurrent state and federal jurisdiction over a controversy, a district court must exercise its jurisdiction unless "exceptional circumstances . . . serv[ing] an important countervailing interest" are present). The court may consider multiple factors, including:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

*Seneca Insurance, supra,* 862 F.3d at 841-842, *quoting R.R. St. & Co. v. Transp. Ins. Co.,* 656 F.3d 966, 979 (9th Cir. 2011). "Any doubt as to whether a factor exists should be resolved against a stay, not in favor of one." *Id.* Moreover, even if "exceptional circumstances" are established, the action should be stayed rather than dismissed. *Montanore Minerals Corp. v. Bakie*, 867 F.3d 1160, 1166 (9th Cir. 2017).

The *Colorado River* doctrine does not warrant stay or dismissal here. First, the issues raised here, while significantly overlapping with those in the Nashville Action, differ in terms of the California state law claims alleged here. The cases do not raise identical issues of federal law. Looking to the *Colorado River* factors, Miller-Garcia raises a colorable argument that Tennessee

state court has no personal jurisdiction over her since she has never worked, conducted business, or physically entered Tennessee. Further, the potential inconvenience of the California federal forum for defendants is undercut by Bellenfant's concession that, at the time of Miller-Garcia's employment and termination, "the company was based in San Francisco." (Bellenfant Decl. ¶ 4.) As the same reasons stated above, section 925 voids the choice of law provision. Consequently, Miller-Garcia's claims under California law are viable, are not protected adequately in the Nashville Action, and would not be resolved by that action since they are not presently alleged as counterclaims. (*See* RJN Exh. H.) "A general preference for avoiding piecemeal litigation is insufficient to warrant" a stay under *Colorado River*, but instead there must be a showing of special concerns that would make parallel litigation "particularly problematic." *Seneca Insurance*, 862 F.3d at 842-43. These considerations are all significant factors favoring denial of a stay of this action. To the extent there are any countervailing factors here, they are greatly outweighed.

### C. Balancing of Section 1404(a) Convenience Factors

Finally, defendants also seek a stay or dismissal of this action based upon section 1404(a). Under the forum non conveniens analysis, the court considers and balances whether the forum serves the interests of the parties and the interests of justice. *Atlantic Marine*, 571 U.S. at 62. The interests of the parties include considerations such as where the parties and witnesses are located and practical problems regarding case administration. *Id.* at 62 n.6. Public interest factors include court congestion, the forum's interest in the matter, the law being applied, and the plaintiff's choice of forum. *Id.*[5] Generally, great weight is accorded to a plaintiff's choice of forum. *Id*. at 63 ("plaintiffs are ordinarily allowed to select whatever forum they consider most advantageous (consistent with jurisdictional and venue limitations). . . ."); *see also Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). Here, taking the public interest factors first, plaintiff's choice of forum

---

[5] The section 1404(a) analysis considers the following non-exhaustive list of factors: (1) the location where the relevant events occurred; (2) the forum that is most familiar with the governing law; (3) plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to plaintiff's cause of action in the chosen forum; (6) the differences in costs of litigation in the two fora; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; (8) the ease of access to sources of proof; and (9) the public policy of the forum state. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000).

8

and California's strong "local interest in adjudicating this action" as expressed in section 925 favor denial of the motion. *See Karl, supra,* 2018 WL 5809428, at *7 (denying 1404(a) motion because "Section 925 expresses California's interest in preventing contractual circumvention of its labor law — tipping the scales against transfer.") Looking to the private factors, this forum again has the advantage of being the location where much of the relevant events occurred, greater familiarity with the applicable law, and greater relative contacts with the respective parties. While the defendant-witnesses here, including Mekenna Olsen,[6] all reside in Tennessee now, defendants have not established that their presence in this district cannot be compelled. Defendants' arguments about the risk of inconsistent judgments and the one-year head start the Nashville Action has on this one, while superficially compelling, are not relevant to section 1404's weighing of a choice between fora under the circumstances. Thus, the Court finds that a stay of this action under section 1404 to be groundless.

**IV. CONCLUSION**

Accordingly, the Motion to Dismiss or Stay this action is **DENIED**.

Defendants shall file their answer no later than **January 30, 2020**. This matter is hereby **SET** for an initial case management conference on **Monday, February 24, 2020**, at 2:00 p.m. in Courtroom One, Federal District Courthouse, 1301 Clay Street, Oakland, California.

This terminates Docket No. 11.

**IT IS SO ORDERED.**

Dated: January 8, 2020

                                      **YVONNE GONZALEZ ROGERS**
                                 **UNITED STATES DISTRICT COURT JUDGE**

---

[6] Mekenna Olsen, while named in the complaint, does not appear to have been served or to have appeared in this Court or the California Superior Court in this action.